IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

CURIO WELLNESS
CORPORATION,

    *Petitioner*,

    v.

HOUSTON SPECIALTY
INSURANCE COMPANY,

    *Respondent*.

Civil Action No. ELH-25-0930

**MEMORANDUM OPINION**

Petitioner Curio Wellness Corporation ("Curio") filed a "Petition To Enforce Appraisal,"
naming Houston Specialty Insurance Company a/k/a Houston Specialty Insurance Company (a
Subsidiary of Skyward Insurance) ("Houston") as defendant. ECF 1 ("Petition"). The Petition is
supported by six exhibits. *See* ECF 1-1, ECF 1-2, ECF 1-3, ECF 1-4, ECF 1-5, ECF 1-6. Curio
seeks "to proceed to appraisal as arbitration," ECF 1 at 1, with respect to disputed amounts of "loss
and damages resulting from a water loss" at petitioner's property. *Id.* at 3, ¶ 6. Suit is filed
pursuant to the Federal Arbitration Act ("FAA" or the "Act"), 9 U.S.C. §§ 1 *et seq.*, and the
Maryland Uniform Arbitration Act ("MUAA"), Md. Code (2020 Repl. Vol., 2025 Supp.), § 3-
201 *et seq.* of the Courts and Judicial Proceedings Article ("C.J.").[1]

The Petition pertains to property located in Maryland Heights, Missouri (the "Property").
*Id.* at 2, ¶ 2. According to the Petition, Houston (the "Insurer") issued policy CURO-HS-0001132-
00 (the "Policy") to Curio for the Property. *Id.* ¶ 2.

---

[1] Jurisdiction is based on diversity of citizenship under 28 U.S.C. § 1332(a). Curio is a
Delaware corporation with its principal place of business in Towson, Maryland. ECF 1, ¶ 1.
Houston is a Texas company with its principal place of business in Texas. *Id.* ¶ 3.

Following the water loss event, Curio filed a claim with Houston. *Id.*, ¶¶ 14–19.[2]  Although neither party disputes insurance coverage, the parties disagree as to the amount of loss. *Id.*, ¶¶ 20–24.  Therefore, Curio requested an appraisal.  However, Curio claims that Houston has not selected an appraiser, as per the terms of the Policy. *Id.* at 5, ¶ 31.  Consequently, Curio seeks to compel the appraisal. *Id.* at 1.

Houston opposes the Petition. ECF 11.  It asks the Court to "deny and dismiss" Curio's Petition and "order that any further petition to enforce appraisal and/or appoint an umpire shall be filed in Missouri . . . ." *Id.* at 7.  Houston advances several contentions to support its position.

First, Houston maintains that Maryland's choice of law rules require the Court to apply Texas law to the Petition, and Texas law does not recognize an appraisal as arbitration. *Id.* at 4.  Second, Houston claims that the Petition is premature because the respective appraisers have not yet had an opportunity to agree on an "umpire." *Id.* at 6.  Third, Houston contends that the Petition was filed in the wrong venue because the Policy states that if the "party-selected appraisers are unable to agree . . . on an umpire," a "petition to appoint an umpire must be filed in Missouri." *Id.*  Houston adds that, under the Policy, "the 'umpire shall be selected by a judge . . . in the state and county . . . in which the property covered is located.'" *Id.* (citation omitted).

Curio has replied. ECF 18.  It also submitted additional exhibits. ECF 18-1, ECF 18-2, ECF 18-3, ECF 18-4, ECF 18-5, ECF 18-6, ECF 18-7.

No hearing is necessary to resolve the Motion. *See* Local Rule 105.6.  For the reasons that follow, I shall transfer this case to the United States District Court for the Eastern District of Missouri.

---

[2] Curio, through a wholly owned subsidiary, has "an ownership and insurable interest in the Property . . . ." ECF 1, ¶ 2.

## I. Factual Background

The Policy is an all risk policy that covers all risk of loss unless excluded or limited by the terms of the Policy. ECF 1, ¶ 11; *see* ECF 1-1. Mark Haushill and Leslie K. Shaunty, based in Houston, Texas, signed the Policy on behalf of the Insurer. ECF 11 at 3. The Policy was delivered to Curio in Towson, Maryland. ECF 1 at 3, ¶ 9; ECF 1-1 at 28. Curio paid the premiums applicable to the Policy, and the Policy was in effect at all times relevant to the current action. ECF 1 at 6, ¶ 36. In particular, it covered the Property during the period of September 2022 to September 2023. ECF 1, ¶ 7.

The Policy contains an appraisal provision (the "Provision"). ECF 1-1 at 28. It states, *id.* (emphasis added):

> D. Except as provided in E. below, the Appraisal Loss Condition is replaced by the following:
>
> APPRAISAL
>
> If we and you disagree on the value of the property or the amount of loss ("loss"), either may make written demand for an appraisal of the loss ("loss"). In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of the written demand for appraisal. The two appraisers will select an umpire. *If they cannot agree upon an umpire within 15 days, then, upon your or our request, an umpire shall be selected by a judge of a court of record in the state and county (or city if the city is not within a county) in which the property covered is located*. The appraisers will state separately the value of the property and amount of loss ("loss"). If they fail to agree, they will submit their differences to the umpire. The umpire shall make an award within 30 days after the umpire receives the appraisers' submissions of their differences. A decision agreed to by any two will be binding.
>
> Each party will:
>
> 1. Pay its chosen appraiser; and
>
> 2. Bear the other expenses of the appraisal and umpire equally. If there is an appraisal, we will still retain our right to deny the claim.

On or about December 24, 2022, a water-based event occurred at the Property, which caused significant damage to the Property ("the Loss"). ECF 1 at 4, ¶ 14. In correspondence between Curio and Houston, the Loss is described as "PIPE BURST/FREEZE – WATER DAMAGE". ECF 1-4 at 2. Curio reported the Loss to Houston under claim number GC026086 (the "Claim"). *See* ECF 1, ¶ 16. Curio then retained Goodman-Gable-Gould/Adjusters International ("GGG") as its adjuster. *Id.* ¶ 19. Houston retained McLarens as its adjuster. *Id.* at 5, ¶ 20.

There is no dispute that Houston had an obligation to cover the Loss. *Id.* ¶ 34. Indeed, Houston accepted the Claim. *Id.* ¶ 21. However, the parties dispute the amount of the Loss. ECF 1, ¶ 34; ECF 11 at 2. Curio estimates the Loss at $529,398.70. ECF 1, ¶ 23; *see* ECF 1-2 at 66. Houston estimates the Loss at $341,928.40. ECF 1, ¶ 23; *see* ECF 1-3 at 3. And, it has made payments to Curio in the amount of $331,928.40. ECF 11 at 2.

On September 3, 2024, Curio's adjuster, Ralph Samson of GGG, sent Houston's adjuster, Dustin Provost of McLarens, a letter requesting an appraisal pursuant to the Provision and naming Curio's appraiser as Dwight Young of Atlantic Estimating, LLC. ECF 1, ¶ 30; *see* ECF 1-4 at 2; ECF 11 at 2. The letter asked Houston's appraiser to contact Curio's appraiser "directly so the two may select an umpire as soon as possible." ECF 1-4 at 2. Sampson added: "Time is of the essence." *Id.*

On September 18, 2024, Houston sent a letter to Samson and Curio (the "Letter", ECF 1-5) in which the Insurer "selected Brandon Van Haveren as its appraiser; requested further information regarding the disagreement between the parties; and reserved its rights with respect to the scope of the appraisal." ECF 11 at 2; *see* ECF 1-5 at 3. Houston wrote, ECF 1-5 at 3: "With respect to any such disagreements as to pricing, Houston agrees that these disagreements are

properly resolved through the Appraisal process." *Id.*   Houston also provided Van Haveren's contact information. *Id.*

Further, the Letter stated, *id.*:

It will be necessary for Houston and Curio to clearly define and agree upon the specific disagreements to be resolved through Appraisal before the process begins. With that in mind, and as requested immediately above, please send the undersigned a written breakdown which specifically identifies, by line item, the pricing set forth in the documentation from ServPro, BluSky, and 360BGC with which Curio has a disagreement. Once this information has been provided, a Scope of Appraisal form will be circulated to the parties and their designated appraisers for review and signature.

Neither party alleges that it or its chosen appraiser tried to contact a counterparty to select an umpire pursuant to the Provision. *See* ECF 1; ECF 11; ECF 18.   Moreover, Curio did not reply to the Letter until the filing of the Petition.   ECF 1 at 6; *see* ECF 1-6.   Through counsel, Curio demanded, *inter alia,* that Houston take part in the appraisal process, challenged Houston's contentions as to the Loss, and notified Houston of this Petition. ECF 1-6 at 2–7.

Additional facts are included, *infra.*

## II.  Legal Principles

### A.  Choice of Law

Jurisdiction is based upon diversity of citizenship, pursuant to 28 U.S.C. § 1332(a).   ECF 1, ¶ 1.   In a diversity action, a federal court must apply the substantive law of the forum state, including that state's choice of law rules. *Klaxon Co. v. Stentor Elect. Mfg. Co.*, 313 U.S. 487, 496 –97 (1941).

In a contract case, Maryland courts follow the rule of *lex loci contractus*, applying the substantive law of the state where the contract was formed, unless there is a choice-of-law provision in the contract. *Erie Ins. Exch. v. Heffernan*, 399 Md. 598, 925 A.2d 636, 648–49 (2007); *Am. Motorists Ins. Co. v. ARTRA Group, Inc.*, 338 Md. 560, 573, 659 A.2d 1295, 1301 (1995); *see*

*also Cunningham v. Feinberg*, 441 Md. 310, 326, 107 A.3d 1194, 1204 (2015); *Lewis v. Waletzky*, 422 Md. 647, 657 n.8, 31 A.3d 123, 129 n.8 (2011). "For choice-of-law purposes, a contract is made where the last act necessary to make the contract binding occurs." *Konover Property Trust, Inc. v. WHE Assocs., Inc.*, 142 Md. App. 476, 490, 790 A.2d 720, 728 (2002) (citing *Commercial Union Ins. Co. v. Porter Hayden Co.*, 116 Md. App. 605, 672, 698 A.2d 1167, 1200 (1997), *cert. denied*, 348 Md. 205, 703 A.2d 147 (1997)).

"Typically, '[t]he *locus contractus* of an insurance policy is the state in which the policy is delivered and the premiums are paid.'" *Porter Hayden*, 116 Md. App. at 673, 698 A.2d at 1200 (citation and some internal quotation marks omitted). This is because delivery of the policy and payment of the premium are ordinarily the last acts necessary to make an insurance policy binding. *See Aetna Cas. & Sur. Co. v. Souras,* 78 Md. App. 71, 77, 552 A.2d 908, 911 (1989).

Houston countersigned the Policy in Texas, after it was already signed by Curio. ECF 11 at 4. It asserts that this was the last act of contracting and therefore Texas law applies under the doctrine of *lex loci contractus*. ECF 11 at 4. Houston supports its claim by highlighting a number of clauses. *Id*.

Defendant points to the Declarations Page of the Policy, which states that the Policy "'shall not be valid unless also signed by a duly authorized representative of the Insurer.'" ECF 11 at 2 (citing ECF 1-1 at 4). It also notes that the Policy "shall not be valid unless countersigned by a duly authorized representative of [HSIC]." ECF 1-1 at 24 (alterations added). However, as discussed, *infra*, Houston has omitted a portion of the clause, which adds: "if required by state law." ECF 1-1 at 24. Houston also points to the signature endorsement on page 25, which reads, ECF 11 at 2 (citing ECF 1-1 at 25): "BY SIGNING AND DELIVERING THE POLICY TO YOU,

WE STATE THAT IT IS A VALID CONTRACT WHEN COUNTERSIGNED BY OUR AUTHORIZED REPRESENTATIVE."

The Insurer's arguments are unpersuasive.  The Maryland Court of Special Appeals[3] has said that, despite provisions almost identical to those that Houston highlights, the "countersigning of the policies [is] not the last act necessary to give the policies binding effect." *TIG Ins. Co. v. Monongahela Power Co.,* 209 Md. App. 146, 166, 58 A.3d 497, 509 (2012) (concluding that the delivery of an insurance policy and premium payments determined choice of law under *lex loci contractus* and not the countersigning in New Jersey), *aff'd on other grounds*, 437 Md. 372, 86 A.3d 1245 (2014).

The Policy states that it "shall *not be valid* unless" signed by a duly authorized representative of Houston.  ECF 1-1 at 4, 24.  Houston seems to suggest that, with the signatures, the Policy is fully operative.  Lack of a proper signature would invalidate the Policy, not finalize it.  Even once countersigned, the Policy must be delivered and premiums must be paid to be operative, *i.e.*, finalized.

To address the contract interpretation arguments requires an analysis of the Policy, which implicates principles of contract interpretation under Maryland law. "Maryland courts interpreting written contracts have long abided by the law of objective contract interpretation, which specifies that 'clear and unambiguous language' in an agreement 'will not give way to what the parties

---

[3]  In the Maryland general election in November 2022, the voters of Maryland approved a constitutional amendment to change the name of the Maryland Court of Appeals to the Supreme Court of Maryland.  And, the voters also approved a change in the name of the State's intermediate appellate court, from the Maryland Court of Special Appeals to the Appellate Court of Maryland.  These changes went into effect on December 14, 2022.  *See* Press Release, Maryland Courts, *Voter-approved constitutional change renames high courts to Supreme and Appellate Court of Maryland* (Dec. 14, 2022).  I shall refer to the courts by the names that were in effect when the cited decisions were issued.

thought the agreement meant or was intended to mean.'" *Urban Growth Prop. Ltd. P'ship v. One W. Balt. St. Assocs. LLC*, No. 882, Sept. Term, 2015, 2017 WL 526559, at *5 (Md. Ct. Spec. App. Feb. 9, 2017) (citation omitted) (unpublished); *see Cochran*, 398 Md. at 16, 919 A.2d at 709; *W.F. Gebhardt & Co., Inc. v. American European Ins. Co.*, 250 Md. App. 652, 666, 252 A.3d 65, 73 (2021); *Huggins v. Huggins & Harrison, Inc.*, 220 Md. App. 405, 417, 103 A.3d 1133, 1139 (2014). In other words, a court will presume that the parties meant what they stated in an unambiguous contract, without regard to what the parties to the contract subjectively intended or personally thought it meant. *See Martz v. Day Development Co., L.C.*, 35 F.4th 220, 225 (4th Cir. 2022); *Dumbarton*, 434 Md. at 51, 73 A.3d at 232; *Dennis v. Fire & Police Employees' Ret. Sys.*, 390 Md. 639, 656, 890 A.2d 737, 747 (2006); *PaineWebber Inc. v. East*, 363 Md. 408, 414, 768 A.2d 1029, 1032 (2001); *see also, e.g., Hartford Acc. & Indem. Co. v. Scarlett Harbor Assoc. Ltd. P'ship*, 109 Md. App. 217, 291, 674 A.2d 106, 142 (1996) ("Where the language of a contract is clear, there is no room for construction; it must be presumed that the parties meant what they expressed."), *aff'd*, 346 Md. 122, 695 A.2d 153 (1997).

A court's "task, therefore, when interpreting a contract, is not to discern the actual mindset of the parties at the time of the agreement." *Dumbarton*, 434 Md. at 52, 73 A.3d at 232. Rather, the court is to "'determine from the language of the agreement itself what a reasonable person in the position of the parties would have meant at the time it was effectuated.'" *Id.* (quoting *Gen. Motors Acceptance v. Daniels*, 303 Md. 254, 261, 492 A.2d 1306, 1310 (1985)); *see Cochran*, 398 Md. 1, 919 A.2d at 710 ("Under the objective theory of contracts, [courts] look at what a reasonably prudent person in the same position would have understood as to the meaning of the agreement."); *Scarlett Harbor*, 109 Md. App. at 291, 674 A.2d at 142 ("[T]he court must, as its first step,

determine from the language of the agreement what a reasonable person in the position of the parties would have meant at the time the agreement was effectuated.").

In other words, "the plain meaning is determined by 'focus[ing] on the four corners of the agreement.'" *Martz*, 35 F.4th at 225 (citation omitted) (alteration in *Martz*). "'The words employed in the contract are to be given their ordinary and usual meaning, in light of the context within which they are employed.'" *DIRECTV, Inc. v. Mattingly*, 376 Md. 302, 313, 829 A.2d 626, 632-33 (2003) (citations omitted). But, Maryland courts also turn to the dictionary "'to supply contractual language with its ordinary and accepted meanings . . . .'" *W.F. Gebhardt & Co., Inc.*, 250 Md. App. at 668, 252 A.3d at 74 (quoting *Credible Behavioral Health, Inc. v. Johnson*, 466 Md. 380, 394, 220 A.3d 303, 311 (2019)).

Here, the signature endorsement on page 24 reads, ECF 1-1 at 24 (emphasis added): "Whereof, the Company has caused this policy to be executed and attested, and, *if required by state law*, this policy shall not be valid unless countersigned by a duly authorized representative of the Company." But, Maryland law does not require countersigning to validate an insurance policy. In fact, Md. Code (2017 Repl. Vol., 2024 Supp.), § 10-128(c)(3) of the Insurance Article states: "A policy is not invalid because it does not have the required signature or countersignature."

Houston undercuts its argument that the countersigning was the last act of contracting by emphasizing the signature endorsement provision on page 25. As noted, the endorsement states, ECF 11 at 2: "BY SIGNING AND DELIVERING THE POLICY TO YOU, WE STATE THAT IT IS A VALID CONTRACT WHEN COUNTERSIGNED BY OUR AUTHORIZED REPRESENTATIVE." *See* ECF 1-1 at 25. Houston suggests that this endorsement means signing is the final act of contracting. However, the Policy plainly requires both signing and delivery. *Id.* And, "signing" is an antecedent to "delivering . . . ." *Id.*

Curio contends that Maryland law should apply as "the policy was delivered – with a countersignature to a Maryland Company in Maryland." ECF 18 at 9. It points to the delivery address on the Policy. *Id.*; see ECF 1-1 at 2. And, Curio claims that the last act of contracting was the delivery. ECF 18 at 9. Additionally, Curio has alleged that it has paid all of the premiums applicable to the Policy, which Houston does not dispute. ECF 1, ¶ 36.

In my view, the final act of contracting was not the countersigning by the Insurer in Texas. Rather, it was delivery of the Policy by Houston to its insured in Maryland.[4] *See TIG,* 209 Md. App. at 166, 58 A.3d at 509; *see also Porter Hayden*, 116 Md. App. at 673, 698 A.2d at 1200; *Aetna,* 78 Md. App. at 77, 552 A.2d at 911. Therefore, Maryland law applies here.

### B.  The Federal Arbitration Act

Curio brings this Petition pursuant to the Federal Arbitration Act or, alternatively, the MUAA[5]. ECF 1 at 1. Petitioner argues that the Act applies to appraisal clauses contained in property insurance policies. ECF 1 at 7. Houston's argument that the FAA does not apply to appraisals is premised on the mistaken application of Texas law. *See* ECF 11 at 4–5.

In *Liberty Mut. Grp., Inc. v. Wright*, DKC 12-0282, 2012 WL 718857 (D. Md. Mar. 5, 2012), Judge Chasanow addressed a petition that sought to invoke a provision in an insurance contract nearly identical to the appraisal Provision here. There, the respondent contended that the FAA did not apply to insurance appraisals. *Id.* at *2.

After the Court conducted an in-depth analysis of the question, Judge Chasanow declared that "it is . . . irrelevant that the contract language in question does not employ the word 'arbitration'

---

[4] There is no claim that Curio failed to pay any premium when due.

[5] The MUAA is mentioned on the first page of the Petition. ECF 1 at 1. However, the parties focus on the FAA.

as such. Rather, what is important is whether the parties clearly intended to submit some disputes to binding review by a third party." *Id.* at *5 (citing *McDonnell Douglas Fin. Corp. v. Pa. Power & Light Co.,* 858 F.2d 825, 830–31 (2nd Cir.1988)) (cleaned up).  The *Liberty* Court found that "the entire appraisal process does constitute 'arbitration.'" and "the FAA is applicable to the petition at issue here."  *Liberty Mut. Grp., Inc.*, 2012 WL 718857, at *6; *see Travelers Cas. Ins. Co. of Am. v. Papagiannopoulous as Trustee of John Galanis Realty Revocable Trust and the Eva Galanis Revocable Trust,* LKG-22-2314, 2023 WL 4826184, at *3 (D. Md. July 27, 2023); *State Auto. Mut. Ins. Co. v. Rod & Reel, Inc.*, PWG-18-340, 2018 WL 5830734, at *5 (D. Md. Nov. 7, 2018), *aff'd*, 774 F. App'x 168 (4th Cir. 2019); *see also Council of Unit Owners of Ellicott Hills Condo. II, Inc. v. Cincinnati Ins. Co.*, CCB-21-2991, 2022 WL 3908555 (D. Md. Aug. 29, 2022) (applying FAA analysis to a motion to compel insurance appraisal).

Similarly, in *Brethren Mut. Ins. Co. v. Filsinger*, 54 Md. App. 357, 458 A.2d 880 (1983), the Maryland Court of Special Appeals ruled, *id*. at 363, 458 A.2d at 883 (citing *Aetna Casualty & Surety Company v. Insurance Commissioner,* 293 Md. 409, 445 A.2d 14 (1982)): "In Maryland, this Court has long recognized that, notwithstanding the distinctions between an appraisal under an insurance policy appraisal clause and arbitration, appraisal is analogous to arbitration."  As such, "this Court has applied arbitration law to appraisal clauses in insurance policies."  *Id.* Applying Maryland law, courts in this District have consistently treated motions to compel appraisal as they would a motion to compel arbitration.  *See, e.g., Gray v. Philadelphia Contributionship*, 748 F. Supp. 3d 367, 373 (D. Md. 2024); *Blitz v. USAA Gen. Indem. Co.,* RDB-24-1070, 2024 WL 4815980 (D. Md. Nov. 18, 2024); *Thompson v. Allstate Prop. & Cas. Ins. Co.,* JMC-22-2379, 2024 WL 3161586 (D. Md. June 25, 2024).

The Provision (ECF 1-1 at 28) is substantively identical to the provisions referenced in the aforementioned cases.  Accordingly, I will apply the Act to the Petition.

"Arbitration is a matter of contract."  *Mey v. DIRECTV, LLC*, 971 F.3d 284, 288 (4th Cir. 2020) ; *see Coinbase, Inc. v. Suski*, 602 U.S. 143, 144 (2024)*; Coady v. Nationwide Motor Sales Corp.*, 32 F.4th 288, 291 (4th Cir. 2022).  The FAA, §§ 1 *et seq.*, "requires courts to enforce covered arbitration agreements according to their terms."  *Lamps Plus, Inc. v. Varela*, 176 U.S. 183 (2019). *Mey*, 971 F.3d at 288; *McCormick v. Am. Online, Inc.*, 909 F.3d 677, 679 (4th Cir. 2018).  Indeed, the FAA "places arbitration agreements on equal footing with other contracts." *Rent-A-Center, West, Inc. v. Jackson*, 561 U.S. 63, 67 (2010); *see Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 443 (2006).  And, arbitration "has been given the imprimatur of the Supreme Court . . . ." *Rowland v. Sandy Morris Fin. & Estate Planning Servs., LLC*, 993 F.3d 253, 257 (4th Cir. 2021) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, 586 U.S. 63 (2019)); *see Badgerow v. Walters*, 596 U.S. 1, 18 (2022); *Am. Express Co. v. Italian Colors Rest.*, 570 U.S. 228, 233 (2013); *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 334 (2011)).

The FAA "establishes 'a liberal federal policy favoring arbitration agreements.'" *Epic Sys. Corp. v. Lewis*, 548 U.S. 497, 505 (2018) (quoting *Moses H. Cone Memorial Hospital v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983)); *see Espin v. Citibank, N.A.*, 126 F.4th 1010, 1016 (4th Cir. 2025); *see also McCormick*, 909 F.3d at 680 ("[T]he FAA elevates the arbitration of claims as a favored alternative to litigation when the parties agree in writing to arbitration.").  Under § 2 of the Act, an arbitration contract is "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract."

Section 3 of the Act provides, 9 U.S.C. § 3:

If any suit or proceeding be brought in any of the courts of the United States upon any issue referable to arbitration under an agreement in writing for such arbitration,

the court in which such suit is pending, upon being satisfied that the issue involved in such suit or proceeding is referable to arbitration under such an agreement, shall on application of one of the parties stay the trial of the action until such arbitration has been had in accordance with the terms of the agreement, providing the applicant for the stay is not in default in proceeding with such arbitration.

Thus, the Fourth Circuit has said: "The FAA requires a court to stay 'any suit or proceeding' pending arbitration of 'any issue referable to arbitration under an agreement in writing for such arbitration.' This stay-of-litigation provision is mandatory." *Adkins v. Labor Ready, Inc.*, 303 F.3d 496, 500 (4th Cir. 2002) (quoting 9 U.S.C. § 3).

Under 9 U.S.C. § 4, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." Further, § 4 provides that, when presented with such a petition, a court

shall hear the parties, and upon being satisfied that the making of the agreement for arbitration . . . is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed.

Conversely, § 4 provides that if the "making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue," then "the court shall proceed summarily to the trial thereof."

"'Sections 3 and 4 [of the FAA] . . . provide two parallel devices for enforcing an arbitration agreement: a stay of litigation in any case raising a dispute referable to arbitration, 9 U.S.C. § 3, and an affirmative order to engage in arbitration, § 4.'" *Galloway v. Santander Consumer USA, Inc.*, 819 F.3d 79, 84 (4th Cir. 2016) (quoting *Chorley Enters. v. Dickey's Barbecue Rests., Inc.*, 807 F.3d 553, 563 (4th Cir. 2015)) (brackets in *Galloway*).

The Fourth Circuit has identified the elements of an action to compel arbitration under the FAA. In *Galloway*, 819 F.3d at 84 (cleaned up) (citations omitted), it said:

> [A]pplication of the FAA requires demonstration of four elements: (1) the existence of a dispute between the parties, (2) a written agreement that includes an arbitration provision which purports to cover the dispute, (3) the relationship of the transaction, which is evidenced by the agreement, to interstate or foreign commerce, and (4) the failure, neglect or refusal of the defendant to arbitrate the dispute.

*See also Adkins*, 303 F.3d at 500–01; *Whiteside v. Teltech Corp.*, 940 F.2d 99, 102 (4th Cir. 1991). And, these requirements apply to motions to compel arbitration brought under § 3 as well as those brought under § 4 of the FAA. *See Noe v. City Nat'l Bank of W. Virginia*, 828 F. App'x 163, 165 (4th Cir. 2020) (per curiam) (citing *Adkins*, 303 F.3d at 500–01).

The *Adkins* Court has said, 303 F.3d at 500: "A district court . . . has no choice but to grant a motion to compel arbitration where a valid arbitration agreement exists and the issues in a case fall within its purview." Accordingly, a court must "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that agreement." *Murray v. United Food & Commercial Workers Int'l Union*, 289 F.3d 297, 302 (4th Cir. 2002); *see Aziz v. ADT LLC*, DKC 25-484, 2025 WL 1556077, at *4 (D. Md. June 2, 2025). However, the Supreme Court has said "that parties may agree to have an arbitrator decide not only the merits of a particular dispute but also gateway questions of arbitrability." *Henry Schein, Inc.*, 586 U.S. 68 (internal quotation marks omitted); *see Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.,* 130 F.4th 396 (4th Cir. 2025), *cert. denied*, 2025 WL 2824136 (Oct. 6, 2025).

As noted, "[w]hether a party has agreed to arbitrate an issue is a matter of contract interpretation: '[A] party cannot be required to submit to arbitration any dispute which he has not agreed so to submit.'" *Levin v. Alms and Assoc., Inc.*, 634 F.3d 260, 266 (4th Cir.

2011) (quoting *Am. Recovery Corp. v. Computerized Thermal Imaging*, 96 F.3d 88, 92 (4th Cir. 1996) (citation omitted)) (alteration in *Levin*); *see Berkeley Cnty. Sch. Dist. v. Hub Int'l Ltd.*, 944 F.3d 225, 236 (4th Cir. 2019); *Minnieland Private Day Sch., Inc. v. Applied Underwriters Captive Risk Assurance Co.*, 913 F.3d 409, 415 (4th Cir. 2019). And, "where the dispute at issue concerns contract formation, the dispute is generally for courts to decide." *Granite Rock Co.*, 561 U.S. at 296; *see also Rowland*, 993 F.3d at 258 ("Section 4 of the FAA has made clear that it is up to the courts to determine whether a contract has been formed . . . . This respects party autonomy and the general principles of contract law."); *Berkeley Cnty. Sch. Dist.*, 944 F.3d at 234 (stating that § 4 of the FAA "requires that the district court—rather than the arbitrator—decide whether the parties have formed an agreement to arbitrate"); *Snowden v. CheckPoint Check Cashing*, 290 F.3d 631, 637 (4th Cir. 2002).

To determine if there is a valid agreement, courts in the Fourth Circuit "'apply ordinary state-law principles that govern the formation of contracts and the federal substantive law of arbitrability.'" *Minnieland Private Day Sch.*, 913 F.3d at 415 (citation omitted). And, "[a]ny uncertainty regarding the scope of arbitrable issues agreed to by the parties must be resolved in favor of arbitration." *Muriithi v. Shuttle Exp., Inc.*, 712 F.3d 173, 179 (4th Cir. 2013) (citations omitted); *see also Levin*, 634 F.3d at 266 ("The 'heavy presumption of arbitrability requires that when the scope of the arbitration clause is open to question, a court must decide the question in favor of arbitration.'") *Adkins*, 303 F.3d at 500.

### C. Fed. R. Civ. P. 12(b)(3)

Under Fed. R. Civ. P. 12(b)(3), a party may move to dismiss a claim for relief based on improper venue.

The Provision (ECF 1-1 at 28) states, in part: "If they [*i.e.*, the two appraisers] cannot agree upon an umpire within 15 days, then, upon your or our request, an umpire shall be selected by a judge of a court of record in the state and county (or city if the city is not within a county) in which the property covered is located."

Houston contends that the Provision requires the filing of the Petition in Missouri. *See* ECF 11 at 1. Defendant also contends that, under the Provision, the suit is premature. *Id.* Curio disagrees. *See* ECF 18.

The Supreme Court has observed that an arbitration clause is "a specialized kind of forum-selection clause that posits not only the situs of suit but also the procedure to be used in resolving the dispute." *Viking River Cruises, Inc. v. Moriana*, 596 U.S. 639, 653 (2022) (citing *Scherk v. Alberto-Culver Co.*, 417 U.S. 506, 519 (1974)). Indeed, in *Sucampo Pharmaceuticals, Inc. v. Astellas Pharma, Inc.*, 471 F.3d 544, 550 (4th Cir. 2006), the Fourth Circuit determined that "a motion to dismiss based on a forum-selection clause," such as an arbitration provision, "should be properly treated under Rule 12(b)(3) as a motion to dismiss on the basis of improper venue." *See also Aggarao v. MOL Ship Mgmt. Co.*, 675 F.3d 355, 366 (4th Cir. 2012)*; Shaomin Sui v. FedEx Ground Package System, Inc.*, CCB-19-3318, 2020 WL 3639984, at *2 (D. Md. Jul. 6, 2020).

The *Sucampo* Court explained, 471 F.3d at 548 (internal and external citations omitted) (alteration added):

> [T]reating a motion to dismiss on the basis of a forum-selection clause under Rule 12(b)(1) presents practical difficulties that undercut the benefits gained from enforcement of the clauses. For example, the court must raise the issue of subject-matter jurisdiction *sua sponte*, if necessary. *See* Fed. R. Civ. P. 12(h)(3). Thus, in cases involving forum-selection clauses, both district and circuit courts would be under an obligation to confirm that the clause was not applicable before reaching the merits of the action . . . . More importantly a motion to dismiss under Rule 12(b)(1) is non-waivable and may be brought at any time—even on appeal— regardless of whether a litigant raised the issue in an initial pleading. Litigants,

therefore, could hold back forum-selection clause objections, until after discovery—or even an adverse verdict.

As the Fourth Circuit has said, Rule 12(b)(6) "is not the appropriate motion for enforcing a forum-selection clause." *Id.* at 549. It explained that "because a 12(b)(6) motion may be brought at any time prior to adjudication on the merits, analyzing forum-selection clauses under Rule 12(b)(6) would present some of the same timing concerns as in the 12(b)(1) context." *Id.* (citations omitted).[6] The Court reasoned: "Analyzing forum-selection agreements under Rule 12(b)(3) would avoid the doctrinal and timing disadvantages of utilizing Rule 12(b)(1) or (6) and be consistent with Supreme Court precedent." *Id.* (citing *Lipcon v. Underwriters at Lloyd's, London*, 148 F.3d 1285 (11th Cir. 1998) (finding that motions to dismiss based on forum-selection clause should be analyzed under Rule 12(b)(3) based on the Supreme Court's decision in *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22 (1988)); *see also Aggarao v. MOL Ship Mgmt. Co., Ltd.*, 675 F.3d 355, 365 n.9 (4th Cir. 2012) (affirming that a challenge based on a forum-selection clause, including an arbitration clause, should be addressed by way of a motion to dismiss for improper venue under Rule 12(b)(3)).

Therefore, I will assess the Petition under the standard for Rule 12(b)(3). This seems appropriate, given the requirements of the Provision, discussed *infra*.

### III. Discussion

#### A.

As noted, in deciding a motion to compel arbitration or to dismiss, courts must first "engage in a limited review to ensure that the dispute is arbitrable—*i.e.*, that a valid agreement exists between the parties and that the specific dispute falls within the substantive scope of that

---

[6] Rule 12(b)(1) concerns subject matter jurisdiction. Rule 12(b)(6) concerns failure to state a claim.

agreement." *Murray*, 289 F.3d at 302; *see also Hooters of Am., Inc. v. Phillips*, 173 F.3d 933, 938 (4th Cir. 1999). Here, neither party contests the validity of the agreement, *i.e.*, the Policy. Nor do they contest that there is a dispute and that it falls within the bounds of the Policy. *See* ECF 1; ECF 11; ECF 18.

Curio asks the Court to "compel appraisal directing Houston . . . to proceed to appraisal as arbitration . . . and also appoint a neutral umpire pursuant to Federal Arbitration Act . . . ." ECF 1 at 1. It asserts that, despite Curio's request for appraisal, Houston refused to select an appraiser within the mandated 20 days. ECF 1, ¶ 31. Curio characterizes the Letter of September 18, 2024, as a refusal by the Insurer "to set the amount of loss by appraisal, and, attempting to improperly carve out aspects of the Claim from the dispute that should be determined by appraisal." *Id.* ¶ 32. As such, Curio "seeks an Order of this Court compelling Houston to proceed with the appraisal process to determine the Amount of loss caused by the covered water event." ECF 18 at 7; *see id.* at 13.

Houston notes that it selected an appraiser. ECF 11 at 2. But, it argues that the Petition is premature, because the "selected appraisers have yet to declare that they cannot agree on the selection of an umpire." ECF 11 at 7. Furthermore, Houston contends that Curio improperly filed its Petition in Maryland, rather than Missouri. ECF 11 at 6. It points to the text of the Provision, which states that "if the party-selected appraisers cannot agree to an umpire, 'the umpire shall be selected by a judge of a court of record in the state and county . . . in which the property covered is located.'" *Id.* (citing ECF 1-1 at 28) (alteration in original).

In response, Curio asks the Court to compel Houston to engage in the appraisal process. ECF 18 at 13. In Curio's view, the terms of the Provision, requiring a court in Missouri to select an umpire if the appraisers cannot agree on one, "is not a defense to this Court compelling appraisal

on a policy issued in Maryland to a Maryland company." *Id.* Moreover, Curio posits that § 4 of the Act "allows Curio to '*petition* **any United States district court** . . .' to compel appraisal." *Id.* (alteration and emphasis in original). Curio maintains that the location language in the Provision governs the selection of an umpire at a later juncture. *Id.* Therefore, Curio asks the Court compel arbitration and leave the umpire selection for the future. *Id.*

**B.**

For convenience, I again set forth the terms of the Provision, in part, ECF 1-1 at 28:

> If we and you disagree on the value of the property or the amount of loss ("loss"), either may make written demand for an appraisal of the loss ("loss"). In this event, each party will select a competent and impartial appraiser and notify the other of the appraiser selected within 20 days of the written demand for appraisal. The two appraisers will select an umpire. If they cannot agree upon an umpire within 15 days, then, upon your or our request, an umpire shall be selected by a judge of a court of record in the state and county (or city if the city is not within a county) in which the property covered is located. The appraisers will state separately the value of the property and amount of loss ("loss"). . . .

Pursuant to 9 U.S.C. § 4, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration" may petition a district court "for an order directing that such arbitration proceed in the manner provided for in such agreement." In *Badgerow v. Walters*, 596 U.S. 1, 4 (2022), the Supreme Court explained that § 4 of the FAA "instructs a federal court to 'look through' the petition to the 'underlying substantive controversy' between the parties—even though that controversy is not before the court." *Id.* at 4 (citing *Vaden v. Discover Bank*, 556 U.S. 49, 62 (2009)). And, "[i]f the underlying dispute falls within the court's jurisdiction . . . then the court may rule on the petition to compel. That is so regardless of whether the petition alone could establish the court's jurisdiction." *Id.* (alterations added); *see Design Gaps, Inc. v. Shelter, LLC*, 130 F.4th 143, 146 (4th Cir. 2025) (citing diversity jurisdiction as an independent basis for jurisdiction under the FAA).

19

However, the text of § 4 of the Act states that an arbitration proceeding compelled by a district court "shall be within the district in which the petition for an order directing [an] arbitration is filed." *Indep. Receivables Corp. v. Precision Recovery Analytics, Inc.,* 754 F. Supp. 2d 782, 786 (D. Md. 2010) (citing 9 U.S.C. § 4). This does not conflict with jurisdiction under FAA § 4 because "[a] forum-selection clause has nothing to do with subject-matter jurisdiction." *Bartels by & through Bartels v. Saber Healthcare Grp., LLC,* 880 F.3d 668, 680 (4th Cir. 2018). Simply, "[a]n enforceable clause prevents a court from exercising jurisdiction over a case that it would otherwise be authorized to hear, but the existence of the clause does not somehow negate the factual and legal bases establishing the court's jurisdiction." *Id*.

There are three approaches that courts have used when a petition to compel arbitration is filed in a district other than the one named in the arbitration contract. *See Arctic Glacier U.S.A., Inc. v. Principal Life Ins. Co.*, PX-16-3555, 2017 WL 2629043 at *7–8 (D. Md. June 19, 2017). I turn to review them.

In the approach taken by the Fifth Circuit, the district court in which the petition is filed may order arbitration in the venue specified by the arbitration agreement, even if that venue differs from the district where the Petition is filed. *Dupuy–Buschinq Gen. Agency, Inc. v. Ambassador Ins. Co.*, 524 F.2d 1275, 1276, 1278 (5th Cir. 1975) (recognizing a Mississippi district court's order directing parties to proceed with arbitration in the contract forum of New Jersey, despite the fact that suit was filed in Mississippi). The second approach allows a district court to compel arbitration in its own district, even if the arbitration clause selects a different forum. *See Textile Unlimited, Inc. v. A.BMH & Co.*, 240 F.3d 781, 783 (9th Cir. 2001) (holding that the FAA "does not require venue in the contractually-designated locale.").

The third approach provides that, under § 4 of the Act, only the district court in the forum chosen for arbitration can order it.  This is the majority approach.  *See*, *e.g., Ansari v. Qwest Commc'ns Corp.*, 414 F.3d 1214, 1219–20 (10th Cir. 2005) ("[W]e agree . . . that a third approach taken by a majority of courts is the correct approach.") (alterations added); *Hetrick Companies LLC v. IINK Corp.*, 710 F. Supp. 3d 467, 493–94 (E.D. Va. 2024) ("[T]he third and majority approach holds that where an 'arbitration agreement contains a forum selection clause, only the district court in that forum can issue a § 4 order compelling arbitration.'") (alterations added); *Indep. Receivables Corp. v. Precision Recovery Analytics, Inc.,* 754 F. Supp. 2d 782, 786 (D. Md. 2010) ("The majority position among courts across the country is that the FAA does not permit district courts to compel arbitration in other jurisdictions. . . .").

*Arctic*, 2017 WL 2629043, is instructive.  There, Judge Xinis explained the third approach, *id.* at *7–8, as follows (second alteration in *Arctic*):

> [B]ecause § 4 of the FAA confers authority to order arbitration only to the district court located in the same forum chosen for arbitration, the petition must either be dismissed or transferred to the forum court. *See, e.g., Ansari v. Qwest Communs. Corp.*, 414 F.3d 1214, 1220–21 (10th Cir. 2005); *Inland Bulk Transfer Co. v. Cummins Engine Co.*, 332 F.3d 1007, 1018 (6th Cir. 2003); *Merrill Lynch, Pierce, Fenner & Smith, Inc. v. Lauer*, 49 F.3d 323, 327 (7th Cir. 1995).
>
> Although the Fourth Circuit Court of Appeals has not directly resolved this issue, it has suggested that it would likely follow the majority approach. *See Elox Corp. v. Colt Indus., Inc.*, 952 F.2d 395 (4th Cir. 1991) (unpublished) ("The [FAA] provides that a district court deciding a motion to compel arbitration shall defer to the terms of the parties' agreement. The district court must, therefore, apply a forum selection clause contained in the agreement if such a clause exists. Further, if a court orders arbitration, the arbitration must be held in the same district as the court.") (internal citations omitted). *See also UBS Fin. Servs. Inc. v. Carilion Clinic,* 880 F. Supp. 2d 724, 733 n.6 (E.D. Va. 2012) (citing *Am. Int'l Specialty Lines Ins. Co. v. A.T. Massey Coal Co., Inc.*, 628 F. Supp. 2d 674, 683 (E.D. Va. 2009)).

According to the *Artic* Court, "the most faithful reading of § 4 requires that the Petition be adjudicated by the court located in the agreed-upon arbitration forum."  *Id.* at *8.  Judge Xinis

reasoned that if there is a clause that elects a specific arbitration forum, "and where § 4 directs that arbitration may be compelled only in the forum in which the district court is located, it logically follows that the petition must brought in the arbitration forum to comport with § 4." *Id.*

District courts in this circuit have followed the majority approach and transferred petitions to compel arbitration to the arbitration forum chosen by the parties. *See, e.g., Thomerson v. Covercraft Indus., LLC*, No. 2:23-CV-02225-DCN, 2024 WL 1251532, at *7 (D.S.C. Mar. 25, 2024); *Hetrick Companies LLC.*, 710 F. Supp. 3d at 495; *Charleston Advancement Acad. High Sch. v. Acceleration Acads., LLC*, No. 2:20-CV-01676-DCN, 2020 WL 4016256, at *18 (D.S.C. July 16, 2020); *Kiawah Island Util., Inc. v. Westport Ins. Corp.*, No. 2:19-CV-1359-DCN, 2019 WL 5394200, at *6 (D.S.C. Oct. 22, 2019); *Indep. Receivables Corp.,* 754 F. Supp. 2d at 787.; *Am. Int'l Specialty Lines Ins. Co.,* 628 F. Supp. 2d at 683; *Sinclair Broad. Grp., Inc. v. Interep Nat. Radio Sales, Inc.,* CCB-05-326, 2005 WL 1000086, at *4 (D. Md. Apr. 28, 2005).

Both parties agree that the Provision applies to the Claim. *See* ECF 11 at 2, 6; ECF 18 at 13. And, the Provision is an arbitration clause. As noted, it provides that "an umpire *shall* be selected by a judge of a court of record in the state and county (or city if the city is not within a county) in which the property covered is located . . . ." ECF 1-1 at 28 (emphasis added). The use of the word "shall" is mandatory. *See*, *e.g.*, *Bufkin v. Collins*, 604 U.S. 369, 379 (2025) ("It is undisputed that the word 'shall' imposes a mandatory command."); *Kingdomware Technologies, Inc. v. United States*, 579 U.S. 162, 171–172, (2016) ("Shall" means "must."); *IntraComm, Inc. v. Bajaj*, 492 F.3d 285, 290 (4th Cir. 2007) (discussing varying uses of the word "shall"); *see also Shapiro v. McManus*, 577 U.S. 39, 43 (2015).

There is no dispute that the Property is located in Missouri.  ECF 11 at 1.  If, as asked by Curio, I were to compel appraisal in the District of Maryland, but a judge in the Eastern District of Missouri were to select an umpire at a later time, this would run counter to the text of § 4 of the Act, which provides: "The hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed."

Curio and Houston agreed to seek an umpire in Missouri if an appraisal dispute were to arise.  ECF 1-1 at 28.  Curio would have the Court enforce the Provision piecemeal, acting on part of the Provision, but not the whole.  As I see it, this Court lacks the authority to compel the appraisal in Maryland.  If an order to compel appraisal is to be granted, it must be granted by a court in the district that was selected for arbitration and where arbitration will proceed.

Houston urges the Court to dismiss the Petition on this basis.  ECF 11 at 6.  However, I am of the view that a transfer to federal court in the Eastern District of Missouri is appropriate.

## C.

Neither party has asked the Court to transfer this Petition.  *See* ECF 1; ECF 11; ECF 18. However, pursuant to 28 U.S.C. § 1404(a), the Court has the authority to transfer the Petition, *sua sponte*, to the appropriate venue.  *See In re Ryze Claims Sols., LLC*, 968 F.3d 701, 706 (7th Cir. 2020) ("It is well established that a district court has the authority to *sua sponte* transfer a case under 28 U.S.C. § 1404."); *Desmond v. Nynex Corp.*, 37 F.3d 1484 (1st Cir. 1994) (per curiam) ( "It is well settled that a court may transfer a case sua sponte pursuant to 28 U.S.C. §§ 1404(a)") ; *Feller v. Brock*, 802 F.2d 722, 729 n.7 (4th Cir. 1986) (stating that, *sua sponte*, "the district court might consider the possibility of transferring this case to the District of Columbia under 28 U.S.C. § 1404(a)."); *see also* 15 Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure § 3844 (4th ed. 2019) (noting that the language of 28 U.S.C. § 1404(a) "is broad enough that a district court can order

transfer on its own initiative.") (collecting cases).  Similarly, pursuant to 28 U.S.C. § 1406(a), a court

may transfer an action brought in an improper venue. *See Porter v. Groat*, 840 F.2d 255, 258 (4th Cir.

1988) ("[W]e adopt as the rule in this circuit the reading of § 1406(a) that authorizes the transfer of a

case . . . for any reason which constitutes an impediment to a decision on the merits in the transferor

district . . . .") (alteration added).  As such, the Court will consider the matter of a transfer of venue.

Ordinarily, "the venue of all civil actions" filed in federal district court is governed by 28

U.S.C. § 1391.  Under § 1391(b), venue exists in:

> (1) a judicial district in which any defendant resides, if all defendants are residents
>     of the State in which the district is located;
>
> (2) a judicial district in which a substantial part of the events or omissions giving
>     rise to the claim occurred, or a substantial part of property that is the subject of
>     the action is situated; or
>
> (3) if there is no district in which an action may otherwise be brought as provided
>     in this section, any judicial district in which any defendant is subject to the
>     court's personal jurisdiction with respect to such action.

However, as the Supreme Court said in *Atl. Marine Const. Co. v. U.S. Dist. Ct. for W. Dist.

of Texas*, 571 U.S. 49, 63 (2013) (citation omitted), "[t]he calculus changes  . . . when the parties'

contract contains a valid forum-selection clause, which 'represents the parties' agreement as to the

most proper forum.'"  In that circumstance, "'a valid forum-selection clause [should be] given

controlling weight in all but the most exceptional cases.'"  *Id.* (alteration in original) (quoting

*Stewart*, 487 U.S. at 33); *see Jones v. US Med. Innovations, LLC*, LKG-24-CV-2887, 2025 WL

1725815 *4 (D. Md. June 20, 2025.)

Section 1404(a) of 28 U.S.C. is also relevant.  It provides: "For the convenience of parties

and witnesses, in the interest of justice, a district court may transfer any civil action to any other

district . . . where it might have been brought."  Section 1404(a) "reflects an increased desire to

have federal civil suits tried in the federal system at the place called for in the particular case by

24

considerations of convenience and justice." *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964).  This

helps "to prevent the waste 'of time, energy and money' and 'to protect litigants, witnesses and the

public against unnecessary inconvenience and expense.'"  *Id.* (citation omitted); *see International*

*Painters and Allied Trade Industry Pension Fund v. Marrero Glass & Metal Inc.*, ELH-18-0452,

2019 WL 423409, at *2 (D. Md. Feb. 1, 2019).  Put another way, § 1404 enables the courts to

"prevent plaintiffs from abusing their privilege under [28 U.S.C.] § 1391 by subjecting defendants

to venues that are inconvenient under the terms of § 1404(a)."  *In re Volkswagen of Am., Inc.*, 545

F.3d 304, 313 (5th Cir. 2008).

Based on the statutory language, the standard for a § 1404(a) transfer can be distilled, as

follows: "(1) the transferee court must be a court in which the action could have been brought

initially; (2) the transfer must be convenient to the parties and witnesses; and (3) the transfer must

be in the interest of justice."  *Dow v. Jones*, 232 F.Supp.2d 491, 499 (D. Md. 2002).

Under a change of venue pursuant to 28 U.S.C. § 1404(a), the district court must "weigh

in the balance a number of case-specific factors."  *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22,

29 (1988).  These include: "(1) the weight accorded to plaintiff's choice of venue; (2) witness

convenience and access; (3) convenience of the parties; and (4) the interest of justice."  *Tr. of*

*the Plumbers and Pipefitters Nat. Pension Fund v. Plumbing Servs., Inc.*, 791 F.3d 436, 444 (4th

Cir. 2015); *see also, e.g.*, *Trs. of Nat'l Elec. Benefit Fund v. Kindness Gen. Contractors, LLC*, PJM-

23-3099, 2024 WL 3557552, at *3 (D. Md. July 24, 2024); *Mamani v. Bustamante*, 547 F.Supp.2d

465, 469 (D. Md. 2008); *Cross v. Fleet Reserve Ass'n Pension Plan*, 383 F.Supp.2d 852, 856 (D.

Md. 2005); *Lynch*, 237 F.Supp.2d at 617.  Other factors include the "local interest in having

localized controversies settled at home" and the "appropriateness in having a trial of a diversity

case in a forum that is at home with the state law that must govern the action." *Stratagene v. Parsons Behle & Latimer*, 315 F.Supp.2d 765, 771 (D. Md. 2004).

Under 28 U.S.C. § 1404(a), the "preliminary" inquiry focuses on whether the civil action "might have been brought in the destination venue." *In re: Volkswagen*, 545 F.3d at 312 (internal quotations omitted). In order to satisfy that requirement, venue in the transferee court must be proper, and that court must have personal jurisdiction over the defendant. *D2L Ltd. v. Blackboard, Inc.*, 671 F. Supp. 2d 768, 778 (D. Md. 2009).

"As a general rule, a plaintiff's 'choice of venue is entitled to substantial weight in determining whether transfer is appropriate.'" *Plumbing Servs., Inc.*, 791 F.3d at 444 (quoting *Bd. of Trs. v. Sullivant Ave. Props., LLC*, 508 F. Supp. 2d 473, 477 (E.D. Va. 1988)); *see also, e.g.*, *Arabian v. Bowen*, 966 F.2d 1441 at *1 (4th Cir. 1992) (per curiam) (table); *Lynch*, 237 F. Supp. 2d at 617; *see also SAS Inst., Inc. v. World Programming Ltd.*, 468 Fed.Appx. 264, 266 (4th Cir. 2012). Ordinarily, unless the balance of factors points "strongly in favor of the defendant, the plaintiff's choice of forum should rarely be disturbed." *Collins v. Straight, Inc.*, 748 F.2d 916, 921 (4th Cir. 1984); *see Gilbert*, 32 F. Supp. 3d at 607; *Mamani*, 547 F. Supp. 2d. at 469. This is particularly true where "'the chosen forum is the plaintiff's home or bears a substantial relation to the cause of action.'" *comScore, Inc. v. Integral Ad Science, Inc.*, 924 F. Supp. 2d 677, 682 (E.D. Va. 2013) (quoting *Pragmatus AV, LLC v. Facebook, Inc.*, 769 F. Supp. 2d 991, 995 (E.D. Va. 2011)); *see also, e.g.*, *Rice v. PetEdge, Inc.*, 975 F. Supp. 2d 1364, 1374 (N.D. Ga. 2013) (recognizing that a plaintiff's choice of venue should be afforded substantial deference where "plaintiff has filed suit in his home state"); *Sentry Select Ins. Co. v. McCoy Corp.*, 980 F. Supp. 2d 1072, 1077 (W.D. Wis. 2013) ("Because plaintiff . . . has chosen its home forum in which to litigate, its choice is particularly deserving of deference.").

As indicated, a plaintiff's choice of forum "is ordinarily accorded considerable weight . . . ." *Lynch*, 237 F. Supp. 2d at 617. But, "that weight is significantly lessened when none of the conduct complained of occurred in the forum selected by the plaintiff and said forum has no connection with the matter in controversy." *Id.*; *see also Bannister v. Wal-Mart Stores E., L.P.*, 843 F. Supp. 2d 610, 615 (E.D.N.C. 2012) ("[T]he deference given to a plaintiff's choice of forum is proportionate to the relationship between the forum and the cause of action."); *Mamani*, 547 F. Supp. 2d at 473 ("[A] court need not accord the choice as much weight when the 'forum has no connection with the matter in controversy.'") (citation omitted); *Bd. of Trs.*, 508 F. Supp. 2d at 477 (observing that the weight of plaintiff's choice of forum "varies depending on the significance of the contacts between the venue chosen by Plaintiff and the underlying cause of action").

"The presence of a valid forum-selection clause requires district courts to adjust their usual § 1404(a) analysis in three ways." *Atl. Marine Const. Co*, 571 U.S. at 51. "First, the plaintiff's choice of forum merits no weight." *Id.* Second, the court "should not consider arguments about the parties' private interests." *Id.* Third, where the plaintiff's original choice of venue contravenes the forum selection clause, transfer to the proper venue "will not carry with it the original venue's choice-of-law rules." *Id.*

Notably, however, only a "valid" forum selection clause is given controlling weight. *Id.* at 62. "Forum selection clauses are enforced only when they encompass the claim at issue." *Light v. Taylor*, 317 Fed.Appx. 82, 83 (2d Cir. 2009) (citation omitted).

As previously noted, neither side disputes the validity of the Provision. In fact, both sides leverage it in their arguments. *See* ECF 1; ECF 11 at 6; ECF 18. The parties contracted that "If they cannot agree upon an umpire within 15 days, then, upon . . . request, an umpire shall be selected by a judge of a court of record in the state and county (or city if the city is not within a

county) in which the property covered is located." ECF 1-1 at 28. In doing so, they agreed that Missouri was a convenient place to adjudicate appraisal if the issue arose. Moreover, the Property is located in Missouri. ECF 1, ¶ 2. If a petition to compel is to be granted, the Eastern District of Missouri ought to grant it. Consequently, it is clear that the Eastern District of Missouri is the proper venue.

Missouri is also the obvious venue because the loss occurred in Missouri. ECF 1 at 4 ¶ 14. The various professionals and contractors who conducted the damage mitigation, assessments, and repair estimates are presumably located in Missouri. ECF 11 at 2; ECF 1-3 at 3.

As noted, Houston does not request a transfer. But, it desires that "any further petition to enforce appraisal and/or appoint an umpire . . . be filed in Missouri pursuant to the express terms of the Appraisal provision contained in the Policy." ECF 11 at 7. Moreover, Houston seeks a ruling on whether Curio's Petition is premature. ECF 11 at 5.

In my view, a transfer of the case is in the interests of justice because it would spare the petitioner the cost and effort of refiling the suit in the Eastern District of Missouri. Courts in this circuit have opted to transfer in the interests of justice, in lieu of dismissal, when appropriate to avoid the delay and inconvenience of refiling. *See Stueben v. Meade*, No. 5:24-CV-231-FL, 2024 WL 4177926, at *3 (E.D.N.C. Sept. 12, 2024); *Imperium Ins. Co. v. Allied Ins. Brokers, Inc.,* CCB-12-1373, 2012 WL 4103889, at *4 (D. Md. Sept. 17, 2012); *Johansson Corp. v. Bowness Const. Co.,* 304 F. Supp. 2d 701, 709 (D. Md. 2004).

Curio seeks to compel Houston to participate in the appraisal process, and asks the Court to retain jurisdiction should it be necessary for an umpire to be appointed. ECF 1 at 12. The United States District Court for the Eastern District of Missouri would have the authority to compel

appraisal.  And, under FAA § 4 and the terms of the Provision, it would have the authority to appoint an umpire if necessary and to adjudicate the case to its resolution.  ECF 1-1 at 28.

## IV. Conclusion

I see no reason to dismiss the Petition.  For the reasons stated, I shall transfer the case to the Eastern District of Missouri.

An Order follows, consistent with this Memorandum Opinion.


Date: 11/10/2025                                     _____/s/_____
                                                     Ellen L. Hollander
                                                     United States District Judge